IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

GERALYN ANDERSON, :
:
    Plaintiff, :
:
VS. :
: 1 : 09-CV-116 (WLS)
MICHAEL J. ASTRUE, :
Commissioner of Social Security, :
:
    Defendant. :

**RECOMMENDATION**

The Plaintiff filed this Social Security appeal on July 22, 2009, challenging the Commissioner's final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations. Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

**LEGAL STANDARDS**

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not reweigh the evidence or substitute its judgment for that of the

Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits his ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

The Plaintiff filed applications for Supplemental Security Income and disability insurance benefits in June 2001 and August 2001 respectively. (T - 69, 286). Her claims were denied initially and upon reconsideration. (T - 31, 38). Following a decision denying Plaintiff's claims by an ALJ in October 2004, the Appeals Council denied review. The Plaintiff appealed to the United States District Court for the Northern District of Georgia, and that court entered a consent order remanding the case under Sentence Four in February 2006.

A hearing was held before an ALJ in June 2007. (T - 374). The ALJ denied Plaintiff's claim

2

in a decision dated November 5, 2007. (T- 374-391). The Appeals Council assumed jurisdiction in March 2009 and issued an unfavorable decision in May 2009. (T - 368-70).

*Statement of Facts and Evidence*

The Plaintiff was 47 years of age at the time of the Commissioner's final decision. (T - 69). She earned a GED and studied data processing and accounting during three years of vocational school. (T - 301). She has past relevant work experience as a data entry clerk, accounts payable clerk, administrative assistant, dispatcher, agent support representative, and seamstress. (T - 97-103). Plaintiff asserts that she became unable to work as of September 12, 2000 due to back and neck pain following a motor vehicle accident. (T - 69). The Appeals Council adopted the ALJ's November 2007 findings and conclusions which resulted in a determination that the claimant was not disabled, and therefore found that Plaintiff suffers from severe impairments in the form of cervical disc disease, lumbar disc disease, obesity, depressed mood, and generalized anxiety. (T - 369, 376). The Appeals Council further agreed with the ALJ's findings

> under steps 1, 2, 3, 4, and 5 of the sequential evaluation, namely, that the claimant has not engaged in substantial gainful activity since September 12, 2000, that she has severe impairments which do not meet or equal in severity an impairment in the Listing of Impairments, that she has the residual functional capacity to perform a reduced range of light exertional work which only involves simple repetitive tasks with no more than incidental public contact, that she is not capable of performing past relevant work and that she could perform jobs as a housekeeper, a recreation aide, and a parking lot attendant as identified by the vocational expert at the hearing.

(T - 369).

However, the Appeals Council rejected the ALJ's findings that "the claimant had acquired work skills from past relevant work and that the claimant could perform jobs as a gate keeper and a central supply worker." (T - 369).

3

**DISCUSSION**

*2003 disability*

The Plaintiff argues initially that the ALJ erred in failing to evaluate the testimony of a medical expert who purportedly agreed with Plaintiff's testimony that Plaintiff's side effects of medications caused Plaintiff to lie down three or more hours per day. At a hearing before the ALJ in September 2003, the Plaintiff testified that basically all of her medications "make me go to sleep when I take them", and that she had to lie down for three hours each day. (T - 302, 303). Dr. Helen Freeman testified at this same hearing as a medical expert and stated that Plaintiff's medications were the type that routinely caused a certain level of drowsiness or sleepiness. Plaintiff's counsel asked Dr. Freeman

> Q   So from her testimony itself is there anything about her testimony that she said that you felt was not accurate?
>
> A   You mean in terms of the side effects of the drugs?
>
> ATTY:  Right. No. It made sense to me.[1]

(T - 320).

As the Commissioner points out, the objective medical record does not contain any other indications that Plaintiff's medications caused negative side effects such as excessive drowsiness, nor does the Plaintiff point to any additional evidence of medication side effects. Treating surgeon Dr. Kinlaw stated in September 2001 that he was "at a loss to understand [Plaintiff's] continued

---

[1]The Court notes that the transcription of the hearing testimony attributes the statement, "No. It made sense to me" to Plaintiff's counsel, although Plaintiff asserts this portion of the testimony was attributable to Dr. Freeman. For purposes of this recommendation, the Court will accept Plaintiff's assertion that Dr. Freeman testified "[i]t made sense to me".

symptoms [of pain] in spite of normal radiographic findings and physical exams." (T - 219). Dr Kinlaw counseled the Plaintiff against narcotic medications in September 2001 and advised Plaintiff to continue taking ibuprofen instead. (T - 218). There is no indication that the ALJ erred in failing to give additional consideration to the possibility of medication side effects impacting Plaintiff's disability claim and allegations. The ALJ's treatment of any side effects of medication was therefore proper. *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (ALJ's treatment of side effects of medication as insignificant supported by lack of support for side effects in medical record.).

*Treating physician's opinions*

The Plaintiff also argues that the ALJ improperly discounted the opinions of her treating and consultative physicians Dr. Beatty, Dr. Wager, and Dr. Willers. Pursuant to 20 C.F.R. § 404.1527(e)(2), the Commissioner will "consider opinions from treating and examining sources on issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding these issues is reserved to the Commissioner." "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). Good cause to discount the opinion of a physician has been found to exist "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal citations omitted). As the *Lewis* court noted, "[w]e are concerned here with the doctors' evaluations of [the plaintiff's] condition and the medical consequences thereof, not their opinions of the legal consequences of [her] condition." *Id.*

The Plaintiff asserts that Dr. Beatty, a treating physician, and Dr. Wager and Dr. Willers, consultative physicians, "all found functional limitations that are disabling under SSR 85-15. Dr.

5

Beatty found [the Plaintiff] has no useful ability to function in 14 areas . . . Dr. Willers similarly found [the Plaintiff] had 'no useful ability' to complete a normal workday or work week; to perform at a consistent pace; or to respond appropriately to changes in a work setting. Dr. Wager found [the Plaintiff] had 'marked' difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. " (Doc. 14, p. 18). The Plaintiff argues that the ALJ erred in rejecting the opinions of these physicians, inasmuch as their opinions were consistent with each other and the Plaintiff's testimony and in that the ALJ provided inadequate reasons for rejecting the findings of these physicians.

The ALJ reviewed and discussed the opinions and treatment issued by Dr. Beatty, Dr. Wager, and Dr. Willers, but concluded as follows:

> Dr. Willers completed a Medical Assessment of Ability to do Work-Related Activities (Mental), and not surprisingly, considering the claimant's unsupported, subjective allegations, the doctor suggested that the claimant had a poor ability to perform even simple work and could not complete normal [sic] workday or work week.
>
> In the end, as noted, Dr. Willers accepted whatever the claimant stated with no critical analysis. The doctor's views as set forth in his assessment are not consistent with or supported by the longitudinal evidence or his own interview. Arguably, in completing the assessment in this matter he merely acted as the claimant's scrivener. Therefore, I do not assign Dr. Willers' views controlling weight.
>
> Dr. Wager contended [in a review of Plaintiff's conditions] that the claimant had experienced 2 or 3 episodes of decompensation. Nonetheless, there is no indication when these episodes occurred or to what he was even referring to. . . . Dr. Wager justifies his opinion that all of the claimant's problems are the result of her many purported closed head injuries from her motor vehicle accidents. Of course, there is no objective medical evidence that the claimant sustained a "closed head injury" in either 2000 or 2003 . . . Dr. Wager merely recites the litany of claimant's complaints and contentions, and justifies his views based on what the claimant has alleged. In light of the foregoing, I do not afford the views of Dr. Wager controlling weight.

6

> Dr. Beatty has also submitted a Medical Assessment of Ability to do
> Work-Related Activities in May 2007 . . . [and] suggested that the
> claimant could not work a full-time job . . . I do not afford the
> information on the form controlling weight [because]. . . [t]he
> information on the form is not interrelated in any way with the objective
> evidence. . . . [w]hat is written on the form is not consistent with what
> Dr. Beatty reported following many of the later times that Dr. Beatty
> treated the claimant. . . . The claimant's activities of daily living belie
> the information reported on the form . . . Dr. Beatty did not address the
> claimant's lack of compliance with her medication; her failure to appear
> for her appointments and the closing of her file; and her refusal to attend
> counseling and how these could have affected her functional abilities . .
> . [and] after suggesting that the claimant has impaired functional and
> cognitive abilities, Dr. Beatty indicated that the claimant is quite
> capable of handling her own financial affairs. . . . For the above reasons,
> I do not afford the views of Dr. Beatty controlling weight.

(T - 382-84).

A review of the opinions issued by these physicians and the ALJ's decision herein reveals that the ALJ's decision to discount the physicians' opinions to the extent that they dictated a finding of disability is supported by substantial evidence. The ALJ provided specific reasons for discounting the opinions of limitation issued by these physicians, reasons which are supported by the objective medical record. Dr. Beatty's limited treatment notes do not support the level of disability he reflects in his 2007 assessment of Plaintiff's abilities, and this assessment conflicted with other treatment records, the Plaintiff's own statements as to her daily activities, and assessments by State agency physicians. As the Commissioner points out, Dr. Beatty's treatment notes do not reflect specific medical findings, only the recording of Plaintiff's complaints, consisting primarily of depression and panic attacks. (T - 501-35). Dr. Wager completed a review of Plaintiff's mental condition in 2007, but the objective medical record does not contain any actual treatment notes from Dr. Wager. (T - 488-500). Dr. Willers also completed a review of Plaintiff's mental condition in 2007, but this review does not reference any treatment notes or objective findings, and as such was

accorded less weight by the ALJ. (T - 486-87). The ALJ provided specific and adequate reasons to discount the opinions of physicians Beatty, Willers and Wager and the ALJ's findings in this regard are supported by substantial evidence.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this recommendation.

**SO RECOMMENDED**, this 2nd day of September, 2010.

*S/ THOMAS Q. LANGSTAFF*

**UNITED STATES MAGISTRATE JUDGE**

asb