**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

GERALYN ANDERSON,             :

                              :

      Plaintiff,               :

                              :

v.                            :       CASE NO.: 1:09-CV-116 (WLS)

                              :

MICHAEL J. ASTRUE, *Commissioner of*  :
*Social Security*,             :

                              :

      Defendant.           :

_____:

## ORDER

Before the Court is a Report and Recommendation from United States Magistrate Judge Thomas Q. Langstaff, filed September 2, 2010. (Doc. 23). It is recommended that the Social Security Commissioner's final decision be affirmed. (Doc. 23 at 8). Plaintiff timely filed an Objection. (Doc. 24).

For the following reasons, the objections set forth in Plaintiff's Objection (Doc. 24) are **OVERRULED** and United States Magistrate Judge Langstaff's September 2, 2010 Report and Recommendation (Doc. 23) is **ACCEPTED, ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein together with the reasons stated and conclusions reached herein. Accordingly, the Social Security Commissioner's final decision is **AFFIRMED**.

**I.     Objection Regarding Failure to Evaluate Testimony**

Plaintiff objects that the Administrative Law Judge ("ALJ") failed to consider the testimony given from Plaintiff,[1] her fiancé,[2] a vocational expert,[3] and a medical expert[4] regarding

---

[1]     On Plaintiff's examination by her attorney, the following colloquy occurred:

1

> Q      Now, you submitted a medication list.  You're on a number of medications.  Did you take your medicines today?
> A      No, I didn't.
> Q      Any reason you didn't take them today?
> A      Because they make me go to sleep when I take them.
> Q      Do you know which ones do that?
> A      Basically all of them.
> Q      Have you tried to see if there's one in particular that gives you more of a problem than others?
> A      I'm sorry.  I didn't understand.
> Q      Have you tried to see if there's one particularly that's more of a problem than the other?  You're taking a lot of them.  Some of them may or may not actually do it but have you ever tried to isolate which ones specifically?
> A      The Neurontin, they decreased it.  I was taking three tablets a day and they decreased the dosage to two, and that does seem to help.
> Q      How do you spend your days since you said you haven't worked since September of 2000?
> A      Well, I try to -- well, three hours a day, I'm lying down.  I do some chores, as far as loading the dishwasher, maybe a load of clothes.  I try to do some of those.

(R. at 302-03).  Although the previous portion of Plaintiff's testimony is cited in Plaintiff's Objection (Doc. 24 at 2 n.1, 3 n.10, 10 n.57), the following relevant colloquy between Plaintiff and her attorney is not cited therein (*see generally* Doc. 24):

> Q      When I asked you earlier about working, you said you have to lie down -- for how long, did you say?
> A      Three hours, mostly.
> Q      Do you feel you have to?
> A      Well, sometimes, I lay down all day, if the pain is really bad.
> Q      Do you go to sleep during the day?  I don't mean at night, I'm talking about during the daytime.
> A      Sometimes, uh-huh.
> Q      You say some days, you might lie down all day.  Is that --
> A      The pain is really bad, yes.
> Q      Do you know what causes one day to be such where the pain is really bad, where you're lying down all day?
> A      If I do a lot of movement that day.  Take, for instance, I'm trying to do the cooking, my Sunday cooking, where I try to fix a big meal that Sunday, and my back locks up on me and I can't move, you know.

(R. at 308).  Aside from these portions of the transcript from the September 9, 2003 hearing before the ALJ – the only transcript cited in Plaintiff's Objection (*see generally* Doc. 24) – the Court's review of the record also revealed the following relevant colloquy between Plaintiff and her attorney in the transcript of the April 26, 2004 hearing before the ALJ:

> Q      Do you take bed rest during the day?
> A      Yes.
> Q      And by that I mean rest either lying back in a recliner chair on a sofa, on the floor or in a bed.
> A      Yes.
> Q      And to what degree do you take that kind of rest during the day?
> A      Three, three and a half hours to four.
> Q      Why do you do that?
> A      Because it helps with the pain.

the sleep-inducing side effects of Plaintiff's medications (R. at 302-03, 314, 319-20). (Doc. 24 at

2-4). Plaintiff alleges that this objectionable error is evidenced by the lack of any discussion of

the sleep-inducing side effects of Plaintiff's medications in the ALJ's Decision (R. at 374-391).

(Doc. 24 at 2-4). Plaintiff relies upon the Eleventh Circuit's requirement "that the ALJ state

specifically the weight accorded to each item of evidence and why he reached that decision."

Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); (Doc. 24 at 3). Plaintiff asserts that

---

(R. at 338).

[2]    Plaintiff's fiancé had the following colloquy with Plaintiff's attorney, which Plaintiff's Objection cites (Doc. 24 at 2 n.1, 10 n.57):

Q       Okay. Are there days when you're home all day?
A       Uh-huh.
Q       Do you see her taking her medicine?
A       Yes, sir.
Q       Any problem after she takes her medicine?
A       Yeah. She'll still be in pain, you know, and she sleeps.
Q       How much will she sleep during the day?
A       Probably about three hours, four hours.
Q       Does she tell you why she went to sleep?
A       Medication.

(R. at 314).

[3]    The Vocational Expert, Douglas Brooks, had the following colloquy with the ALJ, which is cited in Plaintiff's Objection (Doc. 24 at 2 n.3, 10 n.58):

Q       How would you describe Ms. Anderson's past work experience?
A       All her work has been -- she worked as an accounting clerk, essentially a telephone order clerk and a customer service rep. All that work is sedentary and it's semi-skilled.
Q       If all the maladies that she claims from this accident bear out and she's spending three hours or more a day asleep or laying down, she couldn't meet the parameters of work, could she not?
A       That's correct.

(R. at 319).

[4]    The Medical Expert, Dr. Helen Freeman, had the following colloquy with Plaintiff's attorney, which Plaintiff's Objection cites (Doc. 24 at 2 n.2, 3 nn.9-10, 10 n.57):

Q       Doctor, my client also testified about side effects of these medicines that she's taking. … Are they the type that routinely cause a certain level of drowsiness or sleepiness?
A       Yes, they do by themselves and in combination. She's also had trouble with Neurontin and they have lowered that several times.
Q       So from her testimony itself is there anything about her testimony that she said that you felt was not accurate?
A       You mean in terms of the side effects of the drugs?
Q       Right.
[A]     No. It made sense to me.

(R. at 320).

the case relied upon by Judge Langstaff in finding no error in the ALJ's having failed to consider the medication side effects impacting Plaintiff's disability claim and allegations, Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990), is distinguishable from the facts of her case. (Doc. 23 at 5; Doc. 24 at 3). And Plaintiff asserts that reversal and remand is required under MacGregor v. Bowen, 786 F.2d 1050, 1054-55 (11th Cir. 1986), which holds that "[w]hen there have been nonexertional factors (such as depression and medication side effects) alleged, the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." (Doc. 24 at 3).

Plaintiff is correct that the applicable standard begins with above-quoted language from Cowart v. Schweiker. The quote continues that "[u]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Cowart, 662 F.2d at 735 (quotation marks and citation omitted). But the Eleventh Circuit has expanded upon the Cowart instruction in the nearly 20 years since that case was decided. Thus, while "[t]he ALJ must state specifically the weight accorded to each item of evidence and the reasons for his decision," Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986), "the ALJ may implicitly make a determination," Kemp v. Astrue, 308 Fed. App'x 423, 426 (11th Cir. 2009) (citing Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986)), and "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is 'not enough to enable this Court to conclude that the ALJ considered [the claimant's] medical conditions as a whole,'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553,

1561 (11th Cir. 1995)), and "the ALJ's failure [to specifically address evidence] only constitutes reversible error if it created an evidentiary gap that caused unfairness or clear prejudice." Caldwell v. Barnhart, 261 Fed. App'x 188, 190 (11th Cir. 2008) (citing Brown v. Shalala, 44 F.3d 931, 935 (11th Cir. 1995)).

But the Court finds that, upon reviewing Plaintiff's Objection against the record in this case, identification of the applicable legal standard is not a material issue in actual dispute. Rather, a comparison of Plaintiff's objection to the procedural history of her nearly decade-old Social Security action reveals a simple resolution to her claim. Plaintiff objects that the ALJ who delivered the decision at R. 374-91 failed to consider portions of the testimony at R. 298-321. (Doc. 24 at 2-4). The Court finds that *of course* the ALJ's decision did not reflect such testimony, because such testimony was *never delivered to* the ALJ who delivered the decision to which Plaintiff now objects and was *never admitted as evidence before* that ALJ.

The testimony at R. 298-321 was given at a hearing before ALJ Richard McCully on September 9, 2003. (R. at 300). ALJ McCully thereafter, on October 27, 2004, issued an unfavorable decision finding no disability (R. at 23-28), in which ALJ McCully expressly wrote that "[t]he claimant stated that she must lie down at least 3 hours each day with her legs elevated secondary to her pain." (R. at 25). The Appeals Council denied Plaintiff's request for review of ALJ McCully's decision on March 25, 2005. (R. at 5). A sister District Court on the Northern District of Georgia, however, reversed and remanded on February 2, 2006. (R. at 402-404 (N.D. Ga. Case No. 1:05-CV-1485-JEC)). The Appeals Council then vacated the previous hearing decision on October 11, 2006, and remanded the case to an ALJ. (R. at 396-401). The Appeals Council provided express instructions to the ALJ, none of which concerned Plaintiff's sleep

patterns, and all of which were directly instructed by the Northern District of Georgia. (*Compare* R. at 399-400 *with* R. at 402-03).

Plaintiff's case was assigned to ALJ Cam Oetter – <u>not</u> ALJ McCully. On June 26, 2007, a hearing was held before ALJ Oetter. ALJ Oetter admitted all previously entered *exhibits*, but omitted the previous *testimony*, with no objection from Plaintiff. (R. at 559 ("Exhibits 1A through 33F, previously identified, were received into evidence and made a part of the record thereof."); *accord* R. at 1-4C (omitting R. at 298-392 – including the entirety of the September 9, 2003 hearing transcript – from the List of Exhibits)). In the hearing before ALJ Oetter, Plaintiff never mentioned sleep issues upon both the ALJ's questioning (*see generally* R. at 560-79 (including ALJ's open question of "what is it that keeps you from working full-time?" at R. at 565, and Plaintiff's mention of Neurontin with no additional mention of sleep inducement at R. at 571)) and her lawyer's questioning (*see generally* R. at 579-88). The *only* indication to ALJ Oetter that Plaintiff *might* have had sleep issues was Plaintiff's attorney's *hypothetical* posed to the Vocational Expert – a different Vocational Expert than the one who testified in the September 9, 2003 hearing (*compare* R. at 318 (Vocational Expert Douglas Brooks at September 9, 2003 hearing) *with* R. at 589 (Vocational Expert Dennis O'Connor at June 26, 2007 hearing)) – in the following colloquy:

> Q     … If you take hypothetical one and add to it an individual who needs to rest, recline, or lie down daily several times a day, would that preclude the jobs you identified and all other jobs?
> A     The resting that is done I'm presuming is going to be reclining or lying down.
> Q     Yes.
> A     And this is going to occur at odd intervals throughout the workday? Is that your hypothetical?
> Q     Okay. Let me put it very specifically to you. If an individual -- if it's medically reasonable for an individual to have to lie down for -- excuse me -- a minimum of two hours during the daytime, would that preclude all jobs you've identified and all other employment?

A    Yes sir.

(R. at 601-02).

The Court finds that a hypothetical posed to a vocational expert, with no underlying support from the evidentiary record, is not evidence.  *Cf.* <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002) ("In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); <u>Grain Dealers Nat'l Mut. Fire Ins. Co. v. Harrison</u>, 190 F.2d 726, 729 (5th Cir. 1951)[5] (requiring the evidence to "afford[] a sufficient factual basis for the facts assumed in the hypothetical questions propounded").  Thus, Plaintiff's attorney's unsupported suggestion in a veiled hypothetical to a vocational expert that Plaintiff must sleep during the day does not even meet Plaintiff's proffered <u>Cowart</u> standard, which requires the ALJ to provide a statement regarding "each item of evidence." <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981). Plaintiff "bears the burden of proving that she is disabled" to the ALJ.  <u>Moncrief v. Astrue</u>, 300 Fed. App'x 879, 880 (11th Cir. 2008) (citing <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999)).  Other than a hypothetical posed to a vocational expert, Plaintiff submitted nothing to ALJ Oetter indicating that her medication induced sleep.  Plaintiff therefore cannot validly claim error in ALJ Oetter's failure to address sleep inducement.  If it was such an important point, Plaintiff's counsel had an opportunity to question Plaintiff regarding her sleep patterns before ALJ Oetter – but failed to avail himself of that opportunity.  (*See generally* R. at 579-88).

Additionally, the totality of the testimony before ALJ McCully does not show conclusively that Plaintiff's medication caused her to sleep (*see supra* notes 1-4), which is the premise of Plaintiff's objection (*see* Doc. 24 at 2-4).  According to her full testimony before ALJ

---

[5]    In <u>Bonner v. City of Pritchard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

McCully, Plaintiff's pain is also a major contributor.  (*See supra* note 1).  Even if the testimony before ALJ McCully had properly been before ALJ Oetter, then, there is no indication that ALJ Oetter would have found credible the claim that Plaintiff's medication caused her to sleep during the day.

Finally, Plaintiff omitted any discussion of her case's essential procedural history from her Objection to this Court.  (*See generally* Doc. 24).  Plaintiff failed to cite the colloquy between her attorney and Vocational Expert Dennis O'Connor at the June 26, 2007 hearing before ALJ Oetter in her Objection to this Court.  (*See generally* Doc. 24).  And Plaintiff selectively cited portions of the transcript from only *one* of the hearings before ALJ McCully, rather than providing the Court an accurate picture of the *entirety* of the proceedings before ALJ McCully, in her Objection to this Court.  (*Compare* Doc. 24 *with supra* note 1).  These material omissions, which the Court discovered upon its independent review of the record, belie the lack of merit in Plaintiff's objection.

Plaintiff's objection regarding the ALJ's alleged failure to consider her sleep patterns is thus **OVERRULED**.

## II.     Objection Regarding Treating and Examining Doctors' Opinions

Plaintiff objects that ALJ Oetter erroneously did not credit the testimony of treating Dr. Beaty and examining doctors Wagner and Willers in delivering the unfavorable decision, and that had those doctors' opinions been credited then ALJ Oetter would have delivered a favorable finding of disability.  (Doc. 24 at 4-10).

"[T]he federal courts' 'review of the [ALJ's] decision is limited to an inquiry into whether there is substantial evidence to support [its] findings … and whether the correct legal standards were applied.'"  Powell v. Astrue, 250 Fed. App'x 960, 962 (11th Cir. 2007) (quoting

Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002)). This is a "highly deferential standard of review." *Id.* at 963. The Court is forbidden from reweighing the evidence or substituting its judgment for that of the ALJ. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Crawford v. Comm'r, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.*

> Additionally:
>
> The ALJ must give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." Lewis, 125 F.3d at 1440. Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *See* Moore [v. Barnhart], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

Goff v. Comm'r, 253 Fed. App'x 918, 921 (11th Cir. 2007).

Treating psychiatrist Dr. Robert Beaty's involvement in Plaintiff's case is addressed through five pages of ALJ Oetter's decision. (R. at 380-84). On one particular page, ALJ Oetter articulates five specific reasons why Dr. Beaty's views are not afforded controlling weight, using substantial evidence as support. (R. at 384). The Court finds no reversible error.

The opinion of examining phychologist Karl Willers, Ph.D., is addressed in two pages of ALJ Oetter's decision. (R. at 382-83). "[T]he opinions of non-medical doctors are entitled to less weight than the opinions of medical doctors." Freeman v. Barnhart, 220 Fed. App'x 957, 960 (11th Cir. 2007) (citing Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998)). ALJ Oetter

specifically articulated, using substantial evidence as support, the decision to assign Dr. Willers's views no controlling weight. (R. at 382-83). The Court finds no reversible error.

The opinion of examining psychologist Michael Wager, Ph.D., is addressed in three pages of ALJ Oetter's decision. (R. at 380, 383-84). Again, "the opinions of non-medical doctors are entitled to less weight than the opinions of medical doctors." Freeman, 220 Fed. App'x at 960. ALJ Oetter specifically articulated, using substantial evidence as support, the decision to assign Dr. Willers's views no controlling weight. (R. at 382-83). The Court finds no reversible error.

Plaintiff's objection entreats the Court to reweigh the AJL's credibility determinations and use its judgment against the ALJ's judgment. (*See generally* Doc. 24 at 4-10). Plaintiff asserts that the evidence preponderates against the ALJ's findings. (*See generally id.*). This, however, does not comport with the Court's deferential standard of review. ALJ Oetter's determinations are clearly articulated and supported by substantial evidence, and thus will not be reversed by this Court. Plaintiff's objection regarding the ALJ's alleged erroneous credibility determinations is thus **OVERRULED**.

### III.    Conclusion

For the foregoing reasons, the objections set forth in Plaintiff's Objection (Doc. 24) are **OVERRULED** and United States Magistrate Judge Langstaff's September 2, 2010 Report and Recommendation (Doc. 23) is **ACCEPTED, ADOPTED** and made the Order of this Court for reason of the findings made and reasons stated therein together with the reasons stated and

conclusions reached herein.  Accordingly, the Social Security Commissioner's final decision is

**AFFIRMED**.

      **SO ORDERED**, this   22nd  day of September, 2010.

                       /s/ W. Louis Sands

                       **THE HONORABLE W. LOUIS SANDS,**
                       **UNITED STATES DISTRICT COURT**